721 So.2d 705 (1998)
THE FLORIDA BAR, Complainant,
v.
Louis VERNELL, Jr., Respondent.
No. 90010.
Supreme Court of Florida.
September 4, 1998.
Rehearing Denied December 10, 1998.
John F. Harkness, Jr., Executive Director, and John A. Boggs, Staff Counsel, Tallahassee, and Elena Evans, Bar Counsel, Miami, for Complainant.
Louis Vernell, Jr., pro se, North Miami Beach, for Respondent.
PER CURIAM.
We have for review the report of the referee regarding alleged ethical violations by attorney *706 Louis Vernell, Jr. We have jurisdiction. Art. V, § 15, Fla. Const. As discussed below, we approve the referee's factual findings and recommendations as to guilt except for the recommendation that Vernell be found guilty of violating Rule 4-4.2, Rules Regulating The Florida Bar. We also concur in the recommended discipline and disbar Vernell.
The Bar filed a two-count complaint against Vernell alleging violations of rule 4-1.15(a) (failure to hold client's funds in trust); rule 4-1.15(b) (failure to notify client promptly of receipt of funds in his behalf); rule 4-1.4(a) (failing to keep client informed about the status of matters and promptly comply with reasonable request for information); and rule 4-8.4 (conduct involving dishonesty, fraud, deceit, or misrepresentation) of the Rules Regulating The Florida Bar. The referee recommended finding Vernell guilty of all violations charged in the complaint.
The Bar's complaint arose from a complaint filed in 1995 by Howard Rosenberg. Rosenberg retained Vernell in 1989 to represent him in an eminent domain proceeding and in matters before the Federal Aviation Administration (FAA). The eminent domain proceeding involved the efforts of the Department of Transportation (DOT) to condemn property owned by Rosenberg. Rosenberg challenged the determination of the property's value. Prior to trial, the state paid Rosenberg approximately $45,000 for the property. A jury ultimately awarded Rosenberg $70,000 for the property. After trial, the Clerk of the Circuit Court issued checks totaling approximately $60,000 payable to Vernell on Rosenberg's behalf (representing payment for the balance due for the property, for statutory interest, and for attorney's fees and costs). Vernell appealed the trial court award but failed to file a timely reply brief. The district court of appeal affirmed the trial court award.
Rosenberg testified before the referee that Vernell never notified him of receipt of the checks. Rosenberg and his wife testified that they asked Vernell about the status of the funds and the eminent domain case on multiple occasions. Vernell told them that the appeal was pending and that the money was "tied up," even after the appeal was concluded. Vernell never paid any of the proceeds from the checks to Rosenberg.
Rosenberg testified that he had no written fee agreement with Vernell, that Vernell never raised the issue of fees, and that he never received any bills or statements from Vernell. He testified that Vernell told him that the state pays attorney's fees in eminent domain cases if the case goes to trial. Rosenberg offered to pay Vernell twenty-five percent of all sums collected in the eminent domain case in excess of the amount Rosenberg had already received from the state. Rosenberg advanced Vernell $5,000 for trial expenses, expecting that amount to be returned to him upon an award of attorney's fees. In addition, Rosenberg paid other costs and expenses associated with the proceeding.
Rosenberg gave Vernell a $500 retainer to handle several FAA matters, including initiating a lawsuit against the FAA for harassment. Rosenberg testified that although the lawsuit was filed, the defendant was never served. Rosenberg said he and Vernell had no fee discussions relating to the FAA lawsuit and he received no bills or statements from Vernell.
Vernell admitted receiving the checks from the court in the eminent domain proceeding but claimed he kept the checks with Rosenberg's knowledge and consent in order to pay costs and attorney's fees. Vernell stated that he kept Rosenberg advised of the status of all cases and did not conceal anything. Vernell testified that he and Rosenberg had been friends for thirty years, that they had no written fee agreement, and that they did not predetermine a fee amount for any of the matters. Vernell testified that he had an agreement with Rosenberg that he was to be reimbursed for all costs and paid a reasonable fee for his services from the award in the eminent domain proceeding. Vernell denied the existence of any agreement that he would take twenty-five percent of the amount awarded at trial of the eminent domain proceeding. Vernell testified that he told Rosenberg that if the jury award in the eminent domain proceeding did not exceed the amount of an offer of judgment by the *707 state, no attorney's fees would be awarded. Vernell stated that he told Rosenberg that if he lost the appeal, the state would not pay attorney's fees and Rosenberg would owe him $15,000 to $20,000.
Vernell testified that he told Rosenberg he would give him a discount based on their long term friendship. However, he admitted that he never told Rosenberg what his hourly rate would be or the amount of his friendship "discount" and never quoted him a specific amount of fees for either case. Although Vernell testified that he spent hundreds of hours on the eminent domain case, he kept no record of those hours. He later testified that he told Rosenberg that the total fees for his services exceeded $100,000.
Allegations of new misconduct arose during the proceedings before the referee. The record contains a letter from Vernell to Rosenberg dated October 22, 1996, regarding the matters in dispute in this proceeding. Vernell admitted sending the letter to Rosenberg. Rosenberg's attorney initiated the grievance proceeding against Vernell in 1995 and Vernell knew that Rosenberg was represented by counsel in the matter. Although not charged in the complaint, the referee also recommended finding Vernell guilty of violating rule 4-4.2, Rules Regulating Florida Bar (communicating with a person represented by counsel).

ANALYSIS AS TO GUILT
Vernell challenges the referee's recommendation that he be found guilty of an offense not charged in the complaint. The United States Supreme Court has held that because Bar disciplinary proceedings are quasi-criminal in nature, attorneys must know the charges they face before proceedings commence. See In re Ruffalo, 390 U.S. 544, 88 S.Ct. 1222, 20 L.Ed.2d 117 (1968), modified on other grounds, 392 U.S. 919, 88 S.Ct. 2257, 20 L.Ed.2d 1380 (1968). The absence of fair notice as to the reach of the procedure deprives the attorney of due process. See id. (where attorney in disbarment proceeding had no notice that his employment of certain persons would be considered as an offense until after testimony was taken in disciplinary hearing, attorney was deprived of due process). See also Florida Bar v. Price, 478 So.2d 812 (Fla.1985) (rejecting "for due process reasons" referee's finding that attorney committed perjury at trial and during disciplinary hearing where perjury was not charged). Such matters may only be prosecuted after notice and due process concerns are met such as by a new proceeding. We recede from any language in prior opinions that may support a contrary result. See, e.g., Florida Bar v. Stillman, 401 So.2d 1306 (Fla.1981).
Accordingly, we reject the referee's recommendation to find Vernell guilty of violating rule 4-4.2, Rules Regulating the Florida Bar.
We reject Vernell's claim that the referee should have dismissed the complaint because the complaint filed by Rosenberg does not meet the requirements of rule 3-7.3(c), Rules Regulating The Florida Bar. That rule provides:
All complaints, except those initiated by The Florida Bar, shall be in writing and under oath. The complaint shall contain a statement providing: "Under penalty of perjury, I declare the foregoing facts are true, correct and complete."
Rosenberg submitted a signed Florida Bar "Inquiry/Complaint Form" which states, "Under penalty of perjury, I declare the foregoing facts are true and correct and complete." Vernell asserts that the complaint is invalid because the facts of the alleged misconduct are not stated on the form itself but are contained on an attachment referred to in the complaint. At the final hearing, Rosenberg identified the complaint and the attachment and testified that he intended to provide everything under oath. The referee noted that this testimony clarified any concerns Vernell might have had regarding the complaint's validity. We find no error in the referee's refusal to dismiss the complaint on this ground.
We also reject Vernell's claim that the form filed by Rosenberg fails to meet the requirements of rule 3-7.3(c). We do not read the rule to require that a complaint contain an oath administered by an official or that the signature be notarized. Under section 92.525, Florida Statutes (1995), a signed *708 declaration using the language contained in rule 3-7.3(c) subjects a person to the laws of perjury. The Florida Bar form signed by Rosenberg provides, "False statements made in bad faith or with malice may subject you to civil or criminal liability." This is sufficient to meet the requirements of the rule.
Vernell argues that the Bar failed to prove the allegations of the complaint by clear and convincing evidence. A referee's findings of fact regarding guilt are presumed correct and should be upheld unless clearly erroneous or without support in the record. Florida Bar v. Rue, 643 So.2d 1080, 1082 (Fla.1994). The party contesting the referee's findings of fact and conclusions on guilt must demonstrate that there is no evidence in the record to support the findings or that the record evidence clearly contradicts the conclusions. See Florida Bar v. Benchimol, 681 So.2d 663, 665 (Fla.1996); Florida Bar v. Rue, 643 So.2d at 1082. So long as the referee's findings are supported by competent substantial record evidence, we will not reweigh the evidence and substitute our judgment for that of the referee. Florida Bar v. Lecznar, 690 So.2d 1284, 1287 (Fla. 1997).
The evidence is uncontroverted that Vernell received the checks from the court, provided no accounting and failed to pay Rosenberg any of the proceeds from the checks. Rosenberg testified that Vernell never told him that he had received the checks, never told him that the appeal of the eminent domain proceeding was concluded despite numerous inquiries, and never discussed his fee with him.
The referee noted the conflict between Vernell's testimony and Rosenberg's. He resolved the conflict in favor of Rosenberg, which is within the scope of the referee's authority. See Florida Bar v. Niles, 644 So.2d 504, 506 (Fla.1994) (responsibility for fact finding and resolving conflicts in evidence lies with referee). The referee heard and observed the witnesses first-hand and is thus in a unique position to assess their credibility. See Florida Bar v. Lecznar, 690 So.2d at 1287; Florida Bar v. Thomas, 582 So.2d 1177, 1178 (Fla.1991). The testimony of Rosenberg and his wife is competent substantial evidence supporting the referee's findings.
Vernell argues that Rosenberg's credibility was impeached by two FAA officials who testified at the hearing. One witness testified that he believed Rosenberg lied to him during an investigation of Rosenberg's alleged illegal operation of a charter air service. The referee noted that this witness had not been in communication with Rosenberg for the past three or four years. The second witness testified that he had never met Rosenberg and had not talked with him long enough to determine whether or not Rosenberg was dishonest. We find no error in the referee's evaluation of the testimony of these witnesses. In addition, Vernell argues that Rosenberg's testimony was inherently biased and should be disregarded because he was pursuing a claim with the Florida Bar Clients' Security Fund at the time of the proceedings before the referee. There is no evidence in the record that Rosenberg was pursuing such a claim. Nevertheless, assuming the existence of such a claim, Vernell's position is untenable. Under Vernell's theory, no witness or party could ever testify in a proceeding if he or she stood to gain something from the outcome. Contrary to Vernell's contention, this situation is not comparable to State v. Glosson, 462 So.2d 1082 (Fla.1985). There the Court found a due process violation where a criminal prosecution hinged on the testimony of an informant who was to be paid a contingent fee conditioned on his testimony. The witness had an agreement with the sheriff's office under which he would receive ten percent of all civil forfeiture recoveries resulting from criminal investigations in which he cooperated and testified. Although rule 7-2.4, Rules Regulating The Florida Bar, provides that the Bar may require the filing of a grievance complaint as a prerequisite to consideration of a clients' security fund claim, there is no suggestion that an award from the fund is contingent upon the outcome of a grievance proceeding.
Finally, Vernell's claim that he received no written notice of trial is without *709 merit. Rule 3-7.6(h), Rules Regulating The Florida Bar, states:
(h) Notice of Final Hearing. The cause may be set down for trial by either party or the referee upon not less than 10 days' notice. The trial shall be held as soon as possible following the expiration of 10 days from the filing of the respondent's answer, or if no answer is filed, then from the date when such answer is due.
The Bar mailed Vernell a written "Notice of Hearing" on May 16, 1997. The notice indicated that the matter would come on for hearing before the duly appointed referee on August 6, 1997, for the purpose of disciplinary proceedings. Vernell argues that this did not sufficiently notify him that the "trial" was to take place on August 6. We note that Vernell is no stranger to the disciplinary process and we find his claim that he did not know what was to take place on August 6 suspect. Nevertheless, if any confusion existed, it was clarified at a July 24, 1997, hearing before the referee. At that hearing, Bar counsel said, "We are set for trial on August 6th." The referee responded, "That's correct. You still have that trial date. Unless you get an order from me granting [Vernell's] motion to dismiss, that is your trial date." The referee went on to discuss with Vernell and Bar counsel that at least five days before the hearing they were to exchange pretrial catalogues containing a statement of the issues, copies of any legal authority, and a list of exhibits to be introduced. Vernell could have had no doubt after this hearing that the "trial" was to take place on August 6.

ANALYSIS AS TO DISCIPLINE
The referee found that Vernell's history of misconduct compounded by his misconduct in the case at bar, "clearly demonstrate his unfitness to practice law." The referee concluded that Vernell "simply has not learned anything from his two prior suspensions and four reprimands." Although a referee's recommendation for discipline is persuasive, it is ultimately our task to determine the appropriate sanction. Florida Bar v. Beach, 699 So.2d 657, 661 (Fla.1997); Florida Bar v. Reed, 644 So.2d 1355, 1357 (Fla. 1994).
Vernell has a long history of ethical violations. He was privately reprimanded in 1964 (Fla. Bar Case No. 64-00197, November 20, 1964), and publicly reprimanded in 1974. See Florida Bar v. Vernell, 296 So.2d 8 (Fla. 1974). He was suspended for six months in 1979 for convictions of failure to file income tax returns for five years and for conduct prejudicial to the administration of justice. Florida Bar v. Vernell, 374 So.2d 473 (Fla. 1979). He was suspended for three months in 1987 for conduct similar to the misconduct involved here. Florida Bar v. Vernell, 502 So.2d 1228 (Fla.1987) (adding name as payee to a client's settlement check; failing to deliver client's funds; and obtaining funds from settlement proceeds without properly executed retainer agreement). Vernell was admonished in 1992. (Fla. Bar Case No. 90-71811, January 3, 1992). Most recently, in 1995, this Court publicly reprimanded Vernell and placed him on probation for failing to provide competent representation, failing to act diligently and promptly in representing a client, and failing to make reasonable efforts to expedite litigation consistent with his client's interests. See Florida Bar v. Vernell, 665 So.2d 220 (Fla.1995).
These prior offenses are serious aggravating factors properly considered by the referee and this Court in determining the appropriate discipline. See Standard 9.22(a), Fla. Stds. Imposing Law. Sancs.; Florida Bar v. Beach, 699 So.2d at 661. In addition, the misconduct in this case as found by the referee is most serious. This Court has held that misuse of client funds is one of the most serious offenses a lawyer can commit and warrants disbarment. See Florida Bar v. Porter, 684 So.2d 810, 813 (Fla.1996); Florida Bar v. Knowles, 572 So.2d 1373, 1375 (Fla.1991). This case involves the misappropriation of many thousands of dollars of a client's monies. Further, unlike most disciplinary cases involving attorneys who are long-time members of the Bar, the referee did not find, nor does the record reflect, the presence of any substantial mitigating circumstances.
In light of Vernell's history of disciplinary violations, the seriousness of the violations in *710 this case, and the absence of mitigation, we find no basis to deviate from the referee's recommendation that Vernell be disbarred. Accordingly, Louis Vernell, Jr. is hereby disbarred, effective thirty days from the date of this opinion, to allow respondent to close out his practice and protect the interests of existing clients. If respondent notifies this Court in writing that he is no longer practicing and does not need the thirty days to protect existing clients, the Court will enter an order making the disbarment effective immediately. Respondent shall accept no new business from the date this opinion is filed. We also enter judgment against Vernell in favor of The Florida Bar for costs in the amount of $5,030.18, for which sum let execution issue.
It is so ordered.
HARDING, C.J., and OVERTON, SHAW, KOGAN, WELLS, ANSTEAD and PARIENTE, JJ., concur.